UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAUL OGBEVOEN, | § |
| | § |
|     Plaintiff, | § |
| | § |
| VS. | §   CIVIL ACTION NO. H-04-3595 |
| | § |
| ARAMARK CAMPUS, INC., | § |
| | § |
|     Defendant. | § |

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case is Defendant ARAMARK Campus, Inc.'s ("ARAMARK") motion for summary judgment. ARAMARK argues that Plaintiff Paul Ogbevoen, who claims that he was terminated from his employment because of his race and national origin, cannot rebut ARAMARK's legitimate, non-discriminatory reason for firing him. After reviewing the parties' filings and the applicable law, the Court finds that ARAMARK's motion, Docket No. 27, should be and hereby is **DENIED**.

## I. BACKGROUND

ARAMARK is a company that provides food service to, *inter alia*, colleges and universities. ARAMARK hired Ogbevoen, who is a naturalized citizen born in Africa, in 1998. Over the course of the next several years, Ogbevoen worked at ARAMARK cafeteria facilities on various campuses. In January 2002, he was hired by District Manager Paul Justen to serve as Food Service Director at Texas A&M International University ("A&M") in Laredo, Texas.

1

On May 6, 2002, Ogbevoen's wife and four children were involved in an automobile accident. While two of the children sustained only minor injuries, Ogbevoen's son, Heston, was badly hurt and had to be transported by emergency medical helicopter to a hospital, where he remained for three weeks. Ogbevoen's infant daughter, Aisha, survived the crash but died shortly thereafter. Ogbevoen's wife, Willeta, lay in a coma for more than a month following the crash.

As a result of the accident, Ogbevoen took a leave of absence from his work at ARAMARK to care for his wife and surviving children and to make funeral arrangements for his deceased daughter. According to his uncontroverted affidavit, Ogbevoen was on leave from May 6, 2002 until July 1, 2002. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. A, at 2 ¶ e.) During that time, Ogbevoen's duties were performed by his supervisor, Paul Justen. (*Id.* at 2-3 ¶ g.) While Ogbevoen visited the ARAMARK facility once or twice between the time of the accident and his official return to work, the responsibility for maintaining the facility remained at all times with Justen during Ogbevoen's leave of absence. (*Id.*, Ex. A, at 3 ¶ i.)

On June 6, 2002, Dr. Thomas Corti, Dean of Students and Chief Student Affairs Officer at A&M, sent an e-mail message to Ogbevoen, complaining that ARAMARK's recent performance had been poor. (Def.'s Mot. for Summ. J., Ex. 17.) Dr. Corti also relayed to Ogbevoen a complaint by A&M's Associate Athletic Director, who had not received catering menus that ARAMARK had promised to deliver. (*Id.*) Ogbevoen replied to Dr. Corti's message on June 10, 2002, explaining the sources of the problems and accepting responsibility for them. (*Id.*)

On June 26, 2002, Dr. Corti and Betty Momayezi, an A&M-ARAMARK liaison, complained that the ARAMARK facility was dirty and that the meals served there lacked variety.  (*Id.*, Ex. 15.)  Ogbevoen responded the next day, stating that ARAMARK staff were making an effort to keep the food court clean and that their efforts were hampered by the sloppiness and poor supervision of children attending an A&M summer camp.  (*Id.*)  Ogbevoen also noted that the dirty conditions had occurred at a time when Justen, not Ogbevoen, was supervising the facility.  (*Id.*)

On July 1, 2002, Dr. Corti complained that Ogbevoen had not, despite A&M's previous request, issued a cellular telephone to one of his workers, a catering manager who needed to be available to A&M around the clock.  (*Id.*, Ex. 18.)  Dr. Corti also noted that Ogbevoen did not work well with Momayezi, the A&M liaison, whom Ogbevoen did not appear to take seriously.  (*Id.*)

On November 21, 2002, Justen removed Ogbevoen from the Food Service Director position and directed him to search for other positions within ARAMARK.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. A, at 3 ¶ j; *id.* at 4 ¶¶ q-s.)  Ogbevoen was not successful in locating another position.  (*Id.* at 4 ¶¶ r-t.)  ARAMARK informed Ogbevoen in January 2003 that his employment had been terminated, effective December 23, 2002.  (*Id.* at 3 ¶ n.)

ARAMARK replaced Ogbevoen with Ozzie Munoz, a Hispanic male.  (*Id.* at 3-4 ¶¶ n-o.)  In March 2003, Ogbevoen received a letter from Daniel Rios, an elevator technician at A&M.  (*Id.*, Ex. E.)  In that letter, Rios stated that Munoz had told him that ARAMARK's exclusively white upper management had fired Ogbevoen because he "was just the wrong color."  (*Id.* at 3.)

Ogbevoen timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on June 17, 2004. He filed the instant suit on September 15, 2004, asserting claims of racial and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ARAMARK now moves for summary judgment on both claims.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 4777 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### B. Title VII Standard

"Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996). Title VII claims are subject to the burden-shifting

4

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> *McDonnell Douglas* instructs that the plaintiff must first establish a *prima facie* case of [retaliation]. . . . Once the plaintiff presents a *prima facie* case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003). To establish a *prima facie* case of discrimination, a plaintiff must provide evidence that he "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Texas Houston*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotation marks omitted).

### C. Ogbevoen's Claims

It is undisputed that Ogbevoen has established *prima facie* claims of racial and national origin discrimination and that ARAMARK has offered a legitimate, non-discriminatory reason for his termination. Ogbevoen contends, however, that that reason is merely a pretext for discrimination. Ogbevoen has testified that the problems cited by ARAMARK as motivating his termination occurred while he was on leave from his position and while responsibility for the A&M facility lay with Justen. ARAMARK has not controverted this evidence, nor has it pointed to any policy that permits the attribution to an employee on leave of actions taken by another worker.[1]

---

[1] Even had ARAMARK demonstrated that such a policy exists, the employee tasked with performing Ogbevoen's job duties during his leave was not a subordinate but, rather, Ogbevoen's supervisor.

At a minimum, Ogbevoen's evidence establishes a factual question concerning the validity of ARAMARK's explanation for his termination. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'") (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). That evidence, combined with ARAMARK's failure to explain or even to mention the fact that Ogbevoen was on leave when the problems asserted as justifying his termination occurred, tends to establish that ARAMARK's rationale for the firing is, at best, questionable. Accordingly, ARAMARK's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 13th day of June, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

---

ARAMARK has not explained how Ogbevoen can be held responsible for the actions of a higher-ranking employee.